## CLARION BANK *v.* JONES, ASSIGNEE.

1. In the construction of the Bankrupt Act, the fact that a debtor signed and delivered to his creditor, a judgment note payable one day after date, giving to him a right to enter the same of record and to issue execution thereon without delay for a debt not then due, affords a strong ground to presume that the debtor intended to give the creditor a preference, and that the creditor intended to obtain it; and it is unimportant whether the preference was voluntary or given at the urgent solicitation of the creditor.

2. Where, in the case of a person decreed a bankrupt, a question of insolvency at the particular date (when the debtor gave a security alleged to be a preference) is raised, the court may properly charge (much other evidence having been given on the issue), " that if the jury find that the quantity and value of the assets of the debtor had not materially diminished from the day when the security was given, till the day when he filed his petition in bankruptcy, and the day when he was adjudged a bankrupt on his own petition, they may find that he was insolvent on the said first-mentioned day when he gave the security."

3. In a suit by the assignee of a bankrupt to recover the proceeds of the bankrupt's property, sold under a judgment given in fraud of the Bankrupt Act, the measure of damages is the actual value of the property seized and sold; not necessarily the sum which it brought on the sale. The sheriff may be asked his opinion as to such actual value.

4. The giving of a warrant to confess a judgment may be a preference forbidden by the thirty-fifth section of the Bankrupt Act, though not mentioned in that section in the specific way in which it is in the thirty-ninth section.

5. It is not a true proposition of law that the Federal courts will not take jurisdiction of a suit to recover the proceeds of a sheriff's sale of a bankrupt's property, made under a judgment in a State court alleged to have been confessed in fraud of the act, because the judgment has been per-

fected by levy or sale and distribution of proceeds of sale among the lien creditors entitled by virtue of their liens under State courts to receive distribution.

6. When a debtor has once given a warrant of attorney to confess a judgment, he knowing, beyond peradventure, that the holder of it could enter judgment, obtain a lien, and get a preference, it is doubtful whether even his *acts* afterwards, in opposition to the enforcement of the judgment, are evidence against an assignee seeking to recover from the person to whom he gave the warrant, the proceeds of a sale made on a judgment obtained on the warrant. The fact that entry of judgment on the warrant was a surprise to him, and wholly unexpected by him, is certainly not evidence.

·ERROR to the Circuit Court for the Western District of Pennsylvania.

The Bankrupt Act enacts:

"SECTION 35. That if any person, being insolvent or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him . . . *procures* any part of his property to be . . . seized on execution . . . the person . . . to be benefited thereby . . . having reasonable cause to believe such person is insolvent, and that such attachment, &c., is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property or *the value* of it from the person so receiving it, or so to be benefited.

"SECTION 39. That any person residing and owing debts . . . who being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall . . . *give any warrant to confess judgment*, or procure or suffer his property to be taken on legal process with intent to give a preference to one or more of his creditors . . . shall be deemed to have committed an act of bankruptcy, and . . . shall be adjudged a bankrupt on the petition of one or more of his creditors."

These provisions of law being in force, S. & W. Burns were lumbermen and merchants, doing business as partners, in the county of Jefferson, Pennsylvania. They became indebted to the Clarion Bank in the sum of $10,000, the bank having discounted their two notes for $5000 each. The one note was due July 16–19, 1867, and the other August 6–9.

On the 9th of July, S. Burns, one of the partners, having died, the officers of the bank insisted upon a change of the security, and the surviving partner, yielding to their importunity, gave the bank an acknowledgment of the debt, payable one day after date, coupled with a warrant of attorney to confess judgment for the debt and costs.

On the 18th of July, the judgment was entered up in Clarion County, under the warrant of attorney authorizing it, and by exemplification it was transferred to Jefferson, where Burns lived, and had his property and business.

On the 19th of July the attorney of the bank filed his *præcipe* for a *fieri facias*, which was probably issued on the same day or the next day.   On the 22d of July the sheriff of Jefferson County had the writ certainly in his hands, and made a levy on Burns's goods.   The property levied on remained in the sheriff's hands, unsold, for want of time to sell it before the return day of the writ.

To the next term afterwards a *venditioni exponas* was issued, under which the sheriff sold the goods and paid the bank $9359.50.   The balance of the debt and costs was afterwards made by a sale of land in Clarion County.

On the 30th of July, 1867, Burns filed his petition for the benefit of the Bankrupt law in the District Court of the United States for the Western District of Pennsylvania, sitting at Pittsburg.

Upon this petition he was adjudged a bankrupt by the District Court on the 9th day of September, 1867.

His property was assigned by the register in bankruptcy to one Jones, on the 29th of November, 1867, who on the 6th of January, 1869, a year and more afterwards, brought suit in the court below to recover back from the Clarion Bank the debt which it had collected from Burns, the bankrupt.

The declaration alleged—

That Burns *suffered or procured process* to be issued out of the Common Pleas of Jefferson, and that thereupon a large amount of his property was seized, and the proceeds thereof received by the bank on account of its claim against Burns.

That within four months after he procured or suffered the seizure he filed his petition and was adjudicated a bankrupt.

That he was insolvent at the time he gave the note, with warrant of attorney to confess judgment, and did it with a view to give a preference to the Clarion Bank.

That the Clarion Bank accepted the judgment and received the proceeds of the execution, having reasonable cause to believe that Burns was insolvent.

That the judgment, exemplification, execution, and payment of proceeds on the bank's claim were all in fraud of the Bankrupt Act.

That the facts above stated made it the *duty* of the plaintiff to recover the *property* seized, *or the value thereof,* and concluded as in trespass on the case for a tort, to the damage of the plaintiff $30,000.

Plea *not guilty,* with a special traverse of every fact alleged in the declaration, except the judgment note, the execution and levy.

The case came on for trial in November, 1870, before a jury.

The plaintiff produced sundry witnesses whose testimony tended to prove that Burns was insolvent when he gave the judgment-note, and that the defendant had reasonable cause to believe or suspect him of insolvency.

On the other hand the defendant produced witnesses whose testimony tended to prove, that at the date of the judgment and afterwards when it was entered of record the debtor (Burns) was not insolvent, that he did not then contemplate insolvency or bankruptcy, and that the defendant had no reasonable cause to believe or suspect him of being insolvent.

In the course of the trial the plaintiff having given such evidence as he deemed necessary of the fraud committed on the Bankrupt law, proposed to ask the sheriff of Jefferson County, who sold the personal property of S. & W. Burns, on the writ already mentioned, the *actual* value, in his opinion, of such property.

The question was objected to because the evidence would be incompetent, and because the plaintiff could not recover more than the amount for which the property sold at sheriff sale.

The objection was overruled, and the evidence admitted, under exception of the defendant.

The defendant offered to prove by W. Burns, the surviving partner, that the issuing of the execution and the entry of the judgment was a surprise to and wholly unexpected by him, and that from the time he was first apprised of it he opposed the bank in both judgment and execution, and endeavored to have the original judgment opened.

The plaintiff objected to the foregoing offer as introducing evidence irrelevant and incompetent.

The court rejected the first part of the offer, but allowed the defendant to show what the witness did in opposition to the enforcement of the judgment and execution.

The defendant proposed to prove by him, the same witness, that upon the entry of confession of judgment by the Clarion Bank, in Jefferson County, and issuing of execution, he came down to Pittsburg, consulted his Pittsburg creditors, and notified them of the state of affairs; and that, *at their instance*, he went into voluntary bankruptcy, they and he believing that in some way or other, under the provisions of the Bankrupt law, then new to all, the execution and all proceedings thereon might be set aside; that it was a part of the agreement and understanding of the witness and the creditors that the proceeding in bankruptcy was, if they were successful in defeating the bank executions, to be then superseded by arrangement and withdrawn, and the witness to be allowed to resume possession of his mills, &c., and an extension given him, this proof to be accompanied by proof that from and after the issuing of the bank's execution the defendant, Burns, fought and opposed the same.

The plaintiff objected to the offer as introducing evidence irrelevant and incompetent. The objection was sustained, and the evidence rejected, under exception by the defendant.

The court charged :

"That every one is presumed to intend that which is the necessary and unavoidable consequence of his acts, and therefore when W. Burns signed and delivered to the defendant in this case the judgment note dated July 9th, 1867, payable one day after date, giving to the defendant the right to enter the same of record and issue execution thereon without delay, for a debt which was not then due it, it afforded the strongest grounds for the presumption that the debtor intended to give to his creditors a preference, and that the said creditor intended to obtain such preference, thereby enabling him to make his money on execution before any other creditor could interfere; and that in such case it was *wholly immaterial whether the preference was voluntary on the part of the debtor or given at the urgent solicitation of the preferred creditor.*\*

"That if the quantity and value of the assets of the said Burns had not materially diminished from July 9th, 1867, when the judgment note was given, till July 30th, when he filed his petition in bankruptcy, and September 9th, when he was adjudicated a bankrupt, on his own petition, they may find that he was insolvent on the said 9th day of July.†

"That the measure of damages was the value of the property seized and sold by virtue of the execution issued on the judgment, confessed on said judgment note, in the counties of Clarion and Jefferson."‡

The defendant asked the court to charge as follows:

"1st. In this case the plaintiff must recover (if at all) under the provisions of the thirty-fifth or thirty-ninth section of the Bankrupt Act, as the bankrupts, whose assignee sues in this case, to wit, S. & W. Burns, were not so adjudicated in an adverse proceeding in bankruptcy presented by their petitioning creditors, but went into bankruptcy voluntarily. The thirty-ninth section does not apply to this case, and as the thirty-fifth section does not specify, among the acts it exhibits, as does the thirty-ninth section, 'the giving any warrant to confess judgment,' no recovery can be had under that section, and the verdict of the jury must be for the defendant."

---

\* Given in reply to the plaintiff's third prayer.
† Given in reply to the plaintiff's second prayer.
‡ Given in reply to the plaintiff's eighth prayer.

This charge the court refused to give.

The defendant also requested the court further to charge:

"2d. That while under the Bankrupt Act this court has the right to restrain the further action of parties litigant in cases arising under and referred to by the act, from further proceedings in said case during the pendency of the same, and while they are yet undetermined in the State courts, that is to say, while the said cases are yet without judgment, execution, sale of defendant's property, and distribution of proceeds, and while this court has the right and power to restrain proceedings on unfair securities, when given in fraud of the Bankrupt Act, whether of record or not of record; yet this court has not the right or power to, and will not take jurisdiction in a suit of this kind, when the judgment of a State court has been perfected by levy or sale and distribution of proceeds of sale of a defendant's property among the lien creditors of a defendant, entitled by virtue of their liens under State courts to receive distribution."

This charge also the court refused to give.

Verdict and judgment having been given for the assignee in $15,557, the bank brought the case here. The admission of the evidence objected to by the defendant, the refusal to admit that offered by him, the giving of the charges given, and the refusal to give those requested, were the matters assigned for error.

*Mr. J. S. Black, for the Clarion Bank, plaintiff in error:*

The important question is whether the debtor *procured* his personal property to be seized under the execution. If the seizure was not made *by his procurement* with a fraudulent design on his own part to deprive the other creditors of their proper share of his assets, then it was a plain violation of the Bankrupt law to let the plaintiff below recover.

The defendant proposed to prove affirmatively by Burns, the debtor, that the seizure, so far from being procured by him, was a surprise upon him and wholly unexpected; that as soon as he learned what use was going to be made of the warrants of attorney which he had given, he opposed the whole proceeding and endeavored to have the judgment opened.

The court ruled out so much of the evidence as would have shown that there was no collusion or concert between the debtor and the defendant, and consequently no procurement of the seizure by the debtor, but consented to receive proof of the acts which he did in opposition to it. It somewhat surprises us to find that, after this, the court rejected all evidence (mentioned in the defendant's second offer) of the debtor's *acts* in opposition to the execution and levy. This evidence, with that previously offered and partially rejected, directly tended to clear up all doubts about the most material fact in issue, and we think made out a complete defence. But it was rejected as irrelevant and incompetent. The Clarion Bank was convicted of a fraud upon the other creditors of Burns, in the face of the fact that those other creditors of Burns conspired to use the Bankrupt law as a fraud upon the bank.

The charge of the court, as well as all its rulings in the course of the trial, proceeded upon a misconception, then prevalent, of the Bankrupt law, but since rectified in *Wilson* v. *The City Bank.** A special error in addition was committed in permitting the plaintiff to give evidence of the value of property sold, for the purpose of swelling the verdict beyond the amount made out of it and paid to the bank.

We assert, as true principles of law in the construction of the Bankrupt Act, the following propositions:

1. A creditor may take from his debtor one security for his debt as well as another—a judgment note as well as a promissory note; and in any case a proper use of the remedies which the law of the State puts into his hands is no fraud upon the Bankrupt law.

2. Where the creditor institutes proceedings for the recovery of his just debt in the State court, and obtains a judgment which is a lien upon the debtor's land, or takes out an execution, which is a lien upon his personal property, the debtor cannot divest such lien by afterwards applying for the Bankrupt law.

---

* 14 Wallace, 473.

3. The acceptance of a warrant of attorney to confess judgment by a creditor from a debtor known to be insolvent is not in itself a fraud upon other creditors; nor is it made an offence against the Bankrupt law. The thirty-ninth section simply declares it to be an act of bankruptcy on the part of the debtor, but does not enumerate the acceptance of it among the acts which a creditor is forbidden to do under the penalty of losing his debt.

4. The only legal ground of recovery that could exist in this case was that the debtor *procured* the seizure of his personal property under the execution issued by the bank in violation of the thirty-fifth section.

5. To justify a recovery under the thirty-fifth section it was necessary to show that the debtor wilfully and actively engaged in getting the seizure made with the fraudulent intent to pay the debt to the bank out of property which ought to be devoted equally to all his creditors alike, and that the creditor knowing, or having good cause to believe him insolvent, took advantage of his fraud and made himself a party to it by accepting its fruits.

6. If the debtor opposed the levy—tried his utmost to prevent it—was wholly unwilling that his property should be taken by one creditor while the others were left unpaid; if the execution was sprung upon him by surprise, and he fought the levy and sale until every expedient of opposition was exhausted, it is unreasonable to say that he fraudulently procured the seizure to be made, and equally unreasonable to allege that the bank could have united with him in a fraud which he never committed.

7. If Burns, the debtor, conspired with the Pittsburg creditors to petition under the Bankrupt law, not in good faith for the purpose of being discharged, but merely as a means of defeating the rights of the Clarion Bank, then the petition and the proceedings under it were a fraud upon the bank, which takes away all title from the assignee to recover in this action either for the use of the debtor or the creditors.

8. Under no circumstances could the plaintiff recover more than the amount made by the sheriff's sale.

[The learned counsel raised certain other questions not within the errors assigned.]

*Mr. George Shiras, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Assignees of the bankrupt's estate may recover back money or other property paid, conveyed, sold, assigned, or transferred contrary to the provisions of the Bankrupt Act, if such payment, pledge, assignment, transfer, or conveyance was made within four months before the filing of the petition by or against the debtor, and with a view to give a preference to one or more of the creditors of the bankrupt, or to a person having a claim against him, or who was under any liability on his account, provided the debtor was insolvent or in contemplation of insolvency, and the person receiving such payment or conveyance had reasonable cause to believe that a fraud on the Bankrupt Act was intended, or that the debtor was insolvent.*

Two notes of $5000 each were discounted by the defendant corporation for the firm of which the debtor is the surviving partner. Each note was made payable four months after date and neither had become payable at the date of the transaction which is the subject of complaint. They were dated as follows, to wit: the first April 16th, 1867, and the second March 16th, in the same year, and each was indorsed by the firm of which the debtor was a member. Subsequently the senior partner of the firm deceased, and on the 9th of July next after the dates of the notes the officers of the bank insisted upon a different security, and the debtor yielding to their importunity gave the bank a new note, payable one day after date, for the sum of ten thousand dollars, with interest, coupled with a warrant of attorney to confess judgment against him for the amount as of any term, with costs of suit, waiving inquisition, and agreeing to the condemnation of any property that may be levied upon by

---

* 14 Stat. at Large, 536.

any execution which may issue forthwith on failure to comply with the conditions hereof, also hereby waiving the benefit of the exemption laws, or any act of Assembly, relative to executions now in force or hereafter to be passed, as more fully set forth in the record.

Armed with that power the creditor, on the eighteenth of the same month, entered judgment against the debtor for the sum of $10,300 in one of the State courts, under the warrant of attorney annexed to the note, and by exemplification transferred the same to the county where the debtor resided and was engaged in business.

Promptitude seems to have characterized the whole transaction, and on the nineteenth of the same month the creditor filed a præcipe for a *fieri facias*, which it appears was issued on the same day, and on the twenty-second of the same month the sheriff seized certain quantities of white pine boards, amounting in the whole to a million and two hundred thousand feet, and three days later the same officer seized the stock of goods owned by the debtor. Suffice it to say that such proceedings followed that the goods seized were sold and the net proceeds were paid over to the creditor, amounting to nine thousand three hundred and fifty-nine dollars and six cents, and that the balance of the judgment was afterwards paid by a sale of the lands of the debtor situated in another county.

By the record it also appears that the debtor, during the same month, filed his petition in the District Court praying to be adjudged a bankrupt, and that he was so adjudged on the ninth of September following. Pursuant to those proceedings the plaintiff below was duly appointed the assignee of the bankrupt's estate, and on the sixth of January of the next year he instituted this suit to recover back the property, or the value of it, so received by the creditor.

Briefly stated, what the plaintiff alleges is, in substance and effect, that the debtor, being then and there insolvent, with a view to give a preference to the creditor, executed and delivered to him the said bond or note with the warrant to confess judgment thereon against him for the specified

amount; that all the proceedings which led to the judgment, execution, and levy were had with intent to give the creditor a preference over his other creditors, and that the creditor bank accepted the bond or note with the warrant to confess judgment and received the proceeds of the sale of the property having reasonable cause to believe that the debtor was insolvent, and that the bond or note, judgment, exemplification, execution, and payment were made in fraud of the provisions of the Bankrupt Act.

Several counts were filed, but the particulars in which they differ are not material to the questions presented in the assignment of errors. Nor is it necessary to reproduce the pleas filed by the defendant, as it will be sufficient to say that they controvert every material allegation of the declaration, except the execution and delivery of the note and warrant to confess judgment.

Witnesses were introduced by the plaintiff tending to show that the debtor was insolvent when he gave the bond or note with the warrant to confess judgment, and that the debtor gave it to secure a preference to the creditor over his other creditors, and that the defendant had reasonable cause to believe that the debtor was insolvent, and that the bond or note with the warrant to confess judgment was given in fraud of the provisions of the Bankrupt Act.

On the other hand the defendant introduced witnesses whose testimony tended to prove that the debtor at that time was not insolvent, that he did not then contemplate insolvency or bankruptcy, and that the defendant had no reasonable cause to believe or suspect that he was insolvent or that he contemplated anything of the kind.

Matters of that sort, however, are not now in issue, as they were submitted to the jury, and the record shows that the verdict of the jury was in favor of the plaintiff. All such matters having been settled by the verdict of the jury nothing remains except to re-examine the questions of law presented in the bill of exceptions, or such of them as are embodied in the assignment of errors, which are substantially as follows: (1.) That the court erred in charging the

jury as requested by the plaintiff in his third prayer. (2.) That the court erred in charging the jury as requested by the plaintiff in his sixth prayer. (3.) That the court erred in charging the jury as requested by the plaintiff in his eighth prayer. (4.) That the court erred in refusing to charge the jury as requested by the defendants in their first prayer. (5.) That the court erred in refusing to charge the jury that the Circuit Court will not take jurisdiction in such a suit, where it appears that the judgment of a State court has been perfected by levy or sale and distribution of the proceeds of the sale of a defendant's property among his lien creditors. (6.) That the court erred in permitting the plaintiff to give evidence as to the value of the property beyond the amount made out of it and paid to the bank. (7.) That the court erred in rejecting the offer of the defendants to prove by the debtor that he did not procure the execution to be issued or the seizure of the goods to be made.

I. Three of the errors assigned are addressed to the charge of the court, which was substantially as follows:

1. "That every one is presumed to intend that which is the necessary and unavoidable consequence of his acts, and that the evidence introduced that the debtor signed and delivered to the defendants the judgment note payable one day after date, giving to them the right to enter the same of record and to issue execution thereon without delay, for a debt which was not then due, affords a strong ground to presume that the debtor intended to give the creditor a preference and that the creditor intended to obtain it, and that it is wholly immaterial whether the preference was voluntary or was given at the urgent solicitation of the creditor."

Persons of sound mind and discretion must in general be understood to intend, in the ordinary transactions of life, that which is the necessary and unavoidable consequences of their acts, as they are supposed to know what the consequences of their acts will be in such transactions. Experience has shown the rule to be a sound one and one safe to

be applied in criminal as well as civil cases. Exceptions to it undoubtedly may arise, as where the consequences likely to flow from the act are not matters of common knowledge, or where the act or the consequence flowing from it is attended by circumstances tending to rebut the ordinary probative force of the act or to exculpate the intent of the agent. Nor is it any valid objection to the charge that the rule as stated is not one of universal application, as the court is not able to perceive that it was too broadly stated for the case to which it was applied, and the court is the better satisfied with that conclusion in view of the fact that the record shows that witnesses were examined upon the same subject and that their testimony tended to prove the same issue.

Equally unfounded also is the objection to the closing paragraph of the instruction in question, as it is obviously immaterial whether the debtor gave the preference with or without solicitation from the creditor, if the evidence showed that he gave it as alleged in the declaration; for if he gave it the fact that he was urged to do so by the creditor would constitute no defence to the action.

2. "That if the jury find that the quantity and value of the assets of the debtor had not materially diminished from the date when the judgment note was given till the day when he filed his petition in bankruptcy and the day when he was adjudged a bankrupt, they may find that he was insolvent when he gave the judgment note."

Even taken separately, it would be impossible to hold that the circumstantial facts embodied in the instruction did not tend to prove the hypothesis assumed by the plaintiff, and it is well settled that the force and effect of evidence, whether direct or circumstantial, should be left to the jury; but much other evidence was given to prove the same issue, and it would be an unreasonable construction of the charge to suppose that the court in submitting that proposition to the jury intended to exclude from their consideration all the other evidence in the case which was applicable to the same issue, and it is clear that the instruction, when viewed in

the light of the circumstances under which it was given, is entirely unobjectionable.

3. "That the measure of damages is the value of the property seized and sold by virtue of the execution issued on the judgment obtained against the debtor."

Instead of that, it is contended by the defendants that the amount realized by the defendants is conclusive as to the value of the property seized and sold; but the plaintiff was not a party to that proceeding, and the express provision of the Bankrupt Act is that the assignee may in such a case recover the property, or the value of it, from the person so receiving it or so to be benefited by it. Sold as the property was at a judicial sale it cannot be recovered in specie, and the only remedy of the assignee is for the value of it, and no doubt is entertained that the rule prescribed as the measure of damages by the Circuit Court is correct.*

4. "That the Circuit Court erred in refusing to charge the jury that inasmuch as the thirty-fifth section of the Bankrupt Act does not specify the giving of a warrant to confess judgment as a prohibited act, that no recovery in this case can be had under that section, and that the verdict must be for the defendant."

Much discussion of the proposition embodied in that prayer cannot be necessary, as it is repugnant to the words of that section and to the repeated decisions of this court upon the same subject.

5. Complaint is also made that the court below erred in refusing to charge that the court would not take jurisdiction of such a case where the claim had passed *in rem judicatam,* and that the goods had been sold upon the execution issued upon the judgment, but it is too clear for argument that the proposition is inconsistent with the provisions of the Bankrupt Act and utterly opposed to the settled doctrines of this court, which is all that need be said upon the subject.

---

* Conard *v.* Insurance Co., 6 Peters, 274; Comly *v.* Fisher, Taney's Decisions, 121; Marshall *v.* Knox, 16 Wallace, 559; Eby *v.* Schumacher, 29 Pennsylvania State, 40; Sedgwick on Damages (6th ed.), 634; Mayne on Damages (2d ed.), 317.

6. Evidence was given by the plaintiff to show the value of the goods seized and sold, and the defendants excepted to the ruling of the court in admitting that evidence, upon the ground that the amount realized by the sale of the property was the true measure of damages, but the court here is of a different opinion, for the reasons already given, which need not be repeated.

7. Burns, the debtor, was called and examined by the defendants as a witness, and they offered to prove by him that the entry of the judgment and the issuing of the execution were a surprise to and wholly unexpected by him, and that from the time he was first apprised of it he opposed the proceeding and endeavored to have the judgment opened.

Under the ruling of the court the defendants were allowed to prove all acts which the witness did in opposition to the enforcement of the judgment, but the court rejected the first part of the offer of proof, to wit, that the entry of the judgment and the issuing of the execution were a surprise to the debtor, and the defendants excepted to the ruling and now assign that ruling for error.

Well-founded doubts may arise whether even what the debtor did in opposition to the enforcement of the judgment was material to the issue between the parties, as the whole matter, when the debtor gave the note and warrant to confess judgment, passed entirely beyond his control. By his own voluntary act he empowered the defendants to enforce the payment of the amount whenever they pleased, in spite of any opposition he could make. Opposition, under such circumstances, being wholly unauthorized, and gratuitous and useless, it could not serve to unfold, explain, or qualify the antecedent act of giving the note and warrant to confess judgment, as he knew, when he executed and delivered the instrument to the defendants, that it gave them the irrevocable power to enter the judgment and create the lien on his property, and to sue out the execution and to seize and sell the property to pay the debt; but the evidence of what the debtor did in that behalf was admitted, and the ruling of the

court not having been made the subject of an exception by either party, it is not necessary to express any decided opinion as to its admissibility.

Suppose the acts of the debtor in that regard were admissible, still it is quite clear that it was wholly immaterial whether the course pursued by the defendants in entering the judgment and issuing the execution was expected or unexpected by the debtor, as he had given them full power to do everything which they did do, whether he consented at the moment or not, and in spite of every opposition which he could make.   Surprised or not the debtor must have known that the defendants, as against him, were plainly in the exercise of their legal rights as derived from him under the note and warrant to confess judgment.   When he gave the instrument conferring that power he knew beyond peradventure that the defendants could enter the judgment for the amount of the note whenever they should see fit, and that the judgment when entered would or might become a lien on his property, and that it would secure to the creditor a preference over all his other creditors, even in opposition to any remonstrance or entreaty he might make to the contrary.

Such circumstances unexplained would certainly have some tendency to show that the debtor procured his property to be seized on the execution with a view to give a preference to the favored creditor, but it is not necessary further to define in this case the force and effect of such an instrument as evidence to support such a charge, as other evidence was introduced by the plaintiff to prove that issue, which is conclusively established by the verdict of the jury. Power to enter the judgment was expressly conferred by the warrant duly executed by the debtor, and the direct effect of the judgment was to give the defendants a lien or the means of effecting a lien upon the property of the debtor, and to authorize the defendants to sue out the execution and cause the property subject to the lien to be seized and sold to make the money to pay the judgment.

Viewed in the light of these suggestions, it is obvious that

it was wholly immaterial whether the debtor was surprised or not at the consequences, as they had all flowed from his own voluntary act.

· Several other questions were discussed at the argument, but inasmuch as they are not within the errors assigned in the record it is unnecessary to give them any separate examination.

DECREE AFFIRMED.