HUNTINGTON v. BASKERVILLE.

(Circuit Court of Appeals, Eighth Circuit. November 24, 1911.)

No. 3,529.

1. BANKRUPTCY (§ 163*)—VOIDABLE PREFERENCE—TRANSFER OF HOMESTEAD.

A voidable preference under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 800 (U. S. Comp. St. Supp. 1909, p. 1315), cannot be predicated of a conveyance by a bankrupt of his homestead, exempt under the laws of the state, to a creditor in payment of a debt

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 163.*]

2. BANKRUPTCY (§ 159*)—VOIDABLE PREFERENCE—PERSON "BENEFITED."

A transfer of property by an insolvent debtor by means of which a note given by him and a surety was paid, and the purchaser, who had obligated himself to indemnify the surety against loss thereon, was released from his liability, was one by which such purchaser was "benefited" within the meaning of Bankruptcy Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 800 (U. S. Comp. St. Supp. 1909, p. 1315), and, where the other elements of a voidable preference were present, the property or its value is recoverable by the debtor's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 159.*

For other definitions, see Words and Phrases, vol. 1, pp. 750–752.]

In Error to the District Court of the United States for the District of South Dakota.

Action at law by Samuel W. Huntington, trustee in bankruptcy of Otto Jordan, against M. R. Baskerville. Judgment for defendant, and plaintiff brings error. Reversed.

P. J. McLaughlin (A. E. Boyesen, H. H. Flor, and George S. Rix, on the brief), for plaintiff in error.

Perry F. Loucks and Frank H. Ewing (J. E. Mather, on the brief), for defendant in error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge. Otto Jordan, the bankrupt, was a clerk in the employ of Mr. Paulson, a merchant at Watertown, S. D., who also owned a stock of general merchandise at Thomas, S. D. About December 1, 1908, negotiations were going on for the sale of this stock at Thomas to Mr. Jordan. He then owned his homestead at Watertown, worth about $1,500, but had substantially no other means. The parties agreed on a price of $2,725.25 for the stock at Thomas. The defendant, Mr. M. R. Baskerville, was then president of Baskerville & Rowe, a corporation engaged in the wholesale grocery business at Watertown, and he also appears to have been a dealer in farm machinery. The stock at Thomas was sold to Mr. Jordan at the agreed price about December 4, 1908, and paid for, $1,350 in cash and $1,375 in a note signed by Otto Jordan and his father-in-law, William Lucks, a merchant at Watertown. The $1,350 in cash was borrowed from the defendant, M. R. Baskerville, upon the unsecured note of Otto Jordan dated December 3, 1908, payable on or before one year from date, and bearing 8 per cent. interest. William Lucks declined to sign the note for $1,375 with his son-in-law unless secured, and to induce him to sign it the defendant, M. R. Baskerville, executed and turned over to Jordan to be delivered to Lucks the note of the defendant, Baskerville, for $1,375, dated December 3, 1908. Before the purchase, Jordan told Mr. Baskerville that he had no money to pay for the stock, and Mr. Baskerville furnished in cash or personally secured the entire purchase price. Jordan ran the store at Thomas for about six months, and then moved the stock to Henry, S. D., where he continued in business. Some time about the early part of August, 1909, Jordan told defendant he did not know when he could pay his $1,350 note due December 3d, and on August 19th Jordan and wife conveyed their old home at Watertown to defendant in consideration of $1,250, which amount was credited upon said note. This left Jordan with substantially no property except his stock of goods at Henry. In November, 1909, the defendant bought this stock at 80 per cent. of the amount it invoiced, nothing being included in the invoice for freight. Sunday, November 21, 1909, the stock was invoiced, the defendant being personally present and with him three of the employés of Baskerville & Rowe. The invoice was completed that day, the goods turned over that night, and the store was reopened Monday morning by the defendant, but the invoice was not footed up until the following Tuesday, the 23d. It amounted to $3,703.10 and the agreed selling price at 80 per cent. was $2,962.48. Jordan testified that on Tuesday, the 23d of November, the defendant deducted from this sum the balance due him on the $1,350 note, about $180, the whole of the amount due on the note for $1,375 to Paulson signed by Jordan and Lucks and for the amount of which Lucks held defendant's personal note, the amount due Baskerville & Rowe on account for merchandise, about $800, and in full settlement for the stock gave Jordan a check for about $460. Jordan took this check

and cashed it. Some two or more hours later Mr. Baskerville met Jordan, and asked if he had the check and was told it had been cashed. Defendant then directed Jordan to go and get the check back, declined to give any reason, but insisted that this be done, and Jordan complied, paid the money back to the bank, secured the check and took it to Mr. Baskerville, and the latter then gave his check for $2,962.48, and said: "Pay your own bills. I don't want nothing to do with them." Jordan took the new check to the bank, and there found the note for $1,375 to Paulson and paid it out of the proceeds of the new check, and with the balance went back and paid Mr. Baskerville the balance due on his note and paid Baskerville & Rowe something over $800 on its account for merchandise and then had left just the same amount of the first check from Mr. Baskerville.

December 6, 1909, a petition was filed by some of Jordan's creditors to have him adjudged a bankrupt, and he was so adjudged, and the plaintiff duly chosen and qualified as trustee. Mercantile claims have been proved and allowed in excess of $1,700 and substantially no assets have come into the hands of the trustee.

It is clear that Jordan was insolvent at the time of the sale of the stock to the defendant. The plaintiff brought this suit in the bankruptcy court under section 60 of the bankruptcy act. The complaint is in two counts. In the first recovery is sought for the value of the real estate conveyed to the defendant in August, 1909, and in the second it is sought to recover the value of the stock of goods transferred to the defendant November 21, 1909. The case was tried to a jury and at the conclusion of the plaintiff's evidence defendant moved that the court direct a verdict for him. In ruling upon this motion the court said:

"I don't think there is any evidence in this case that Baskerville had reasonable grounds to believe that the transfer of the real estate was intended as a preference. At least I don't think there is evidence sufficient to sustain a verdict for the plaintiff under that count. Under the second count, I recognize that, where a person receives a transfer of a whole stock in trade of a debtor under the circumstances as existed in this case, there is evidence to go to the jury upon the question as to whether that transaction was intended as a preference. But I concluded that under the proof in this case in regard to the transaction as it appears in the evidence of the plaintiff as to the giving of the check of some $2,900 in cash—or giving the check and Jordan obtaining the cash and paying these other creditors that no recovery can be had in this action as against Baskerville, except for the sum of $180 which he received on his indebtedness."

Whereupon counsel for plaintiff stated in open court that as to the item of $180 shown by the evidence to have been received by the defendant and applied on his own indebtedness the plaintiff would waive the right to recover this item in this action and take the ruling of the court as if this item were eliminated, and thereupon by direction of the court a verdict was returned for defendant on both counts and judgment was rendered thereon, and the trustee has brought the case here on writ of error.

[1] The court's ruling on the first count was correct. The plaintiff's own evidence shows beyond question that the real estate conveyed to defendant was at one time the homestead of the bankrupt,

and as such exempt and fails to show that it was legally abandoned or ceased to be exempt, and even if not conveyed to the defendant, it would not have passed to the trustee and of course it is no affair of his what became of it. Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061; Ingram v. Wilson, 125 Fed. 913, 60 C. C. A. 618; In re Nye, 133 Fed. 33, 66 C. C. A. 139; In re Celsus Orear (C. C. A.) 189 Fed. 888; Gregory Company v. Bristol, 191 Fed. 31.

[2] The complaint did not allege the giving of a preference in the disposition of the proceeds or purchase money of the stock, but in the disposition of the stock itself, and the action was not to recover the purchase money as having been given in unlawful preference, but to recover the value of the stock of merchandise which it was claimed was given in unlawful preference. If the transfer of the merchandise did not constitute an unlawful preference, but the preference, if any, consisted in the disposition of the proceeds, plaintiff was not entitled to go to the jury on the $180 paid on the original $1,350 note. Omitting for clearness the portions of section 60 of the bankruptcy act not material here it as amended reads as follows:

"a—A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, made a transfer of any of his property, and the effect of the enforcement of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. .b—If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

The court below quite correctly held there was sufficient evidence of the transfer within four months, of the then insolvency of the bankrupt, that the effect of enforcing the transfer would be to give defendant a greater percentage of his debt than other creditors of the same class, that defendant had reasonable cause to believe that it was intended thereby to give a preference, but instead of holding that, if the jury found for the trustee on all these points, he could recover the value of the stock as expressly provided in the statute, held that he could only recover the amount subsequently actually paid from the purchase money upon defendant's note, being about $180. There might have been some strength in the court's position if the preference relied on was in the transfer of the purchase money, instead of as it was in fact on the transfer of the stock two days before, but it cannot be sustained in view of the actual issues. Clarion Bank v. Jones, 88 U. S. 325, 22 L. Ed. 542; North v. House, Fed. Cas. No. 10,310. It is true these cases were decided under the act of 1867, but the language of that act as to the measure of damages in cases of preferential transfers is identical with the language of the present law. By adopting language that had been construed by the Supreme Court, it is to be presumed that Congress adopted it with that construction in mind. If this were not true, it would still be clear that if the transfer was an unlawful preference the defendant was, in the language of the statute, "benefited thereby" to the full

extent of the Jordan-Lucks note. Lucks, so far as it appears, was solvent, and it is quite clear that, if he paid the note in whole or in part by an agreement made at the instance of the bankrupt, defendant was bound to indemnify fully Lucks against all liability thereon, and there can be no doubt under the circumstances that, in the absence of a preference, Lucks was doomed to pay this note in whole or in part and Baskerville to make good his loss, and that, having done so, Jordan was, in turn, liable to Baskerville. It is not necessary to determine in what exact legal class the relations between Jorden and Baskerville placed them. The liability of Baskerville to indemnify Lucks was absolute, and, if by means of a transfer of merchandise to defendant in unlawful preference he was wholly released from this liability, he was in the very language of the statute "benefited thereby." See Kobusch v. Hand, 156 Fed. 660, 84 C. C. A. 372, 18 L. R. A. (N. S.) 660; Swarts v. Siegel, 117 Fed. 13, 54 C. C. A. 399; Bartholow v. Bean, 85 U. S. 635, 2 L. Ed. 866.

The court erred in directing a verdict for the defendant on the second count of the complaint, and its action is reversed, and the cause is remanded, with directions to grant a new trial.