## NOGI v. GREENWOOD.
### No. 2775.

District Court, M. D. Pennsylvania.
Sept. 21, 1932.

Welles, Mumford & Stark, of Scranton, Pa., for plaintiff.

Kelly, Balentine, Fitzgerald & Kelly, of Scranton, Pa., for defendant.

WATSON, District Judge.

The plaintiff sued to recover from the defendant a preference under section 60a and

section 60b of the Bankruptcy Act of 1898 (11 USCA § 96 (a, b).

The case was tried before the court without a jury.

From the evidence it appears and the court finds as facts:

1. That W. D. Miller gave to R. W. Greenwood, the defendant, his judgment note dated February 21, 1930, payable April 1, 1930, for the sum of $13,709.27, being the amount of the balance of that which Miller had agreed to pay Greenwood for the stock in trade and fixtures in "Greenwood's," a furniture store in Tunkhannock, Wyoming county, Pa.

2. That a judgment was entered according to the terms of the note for $13,709.27 on March 31, 1930, to No. 111 April term, 1930, in the court of common pleas of Wyoming county, Pa.

3. That on January 16, 1931, Greenwood caused to be issued a fi. fa. on said judgment to collect debt, $13,709.27, attorneys' commission, $695.00, costs, $4.75, and interest from February 21, 1930, less a payment theretofore made, $3,000.

4. That, January 16, 1931, Greenwood caused to be entered a judgment in accordance with the confession in the lease between him and Miller for the premises where the furniture store was located. This judgment was entered to No. 196 January term, 1931, in the court of common pleas of Wyoming county, Pa., for $36,000.

5. That, January 16, 1931, Greenwood caused to be issued a fi. fa. on said judgment entered on said confession in said lease to collect debt, $36,000, commissions and costs, less $2,300.

6. That on January 23, 1931, the sheriff of Wyoming county sold at public sale all of the personal property of Miller, as directed under the writs of fi. fa., to R. W. Greenwood, the defendant, for the sum of $339.50, and delivered to R. W. Greenwood a bill of sale for said personal property.

7. That on March 27, 1931, an involuntary petition in bankruptcy was filed against W. D. Miller in this court, and that on April 17, 1931, W. D. Miller was adjudicated a bankrupt by this court.

8. That Henry Nogi was duly elected trustee in bankruptcy of Wayne D. Miller, bankrupt, duly qualified, and was acting as such trustee when this suit was commenced.

9. That as a result of the execution sale on January 23, 1931, all of the personal property of Miller, referred to in the bill of sale, from the sheriff of Wyoming county, was transferred to Greenwood, the defendant.

10. That the property which was transferred to the defendant January 23, 1931, was all of the property owned by Miller, excepting a small amount of clothing and household goods, worth not to exceed $300.

11. That at the time of the transfer of the personal property Miller was wholly and hopelessly insolvent.

12. That the transfer of the property was made to the defendant within four months before the filing of the petition in bankruptcy.

13. That the transfer of the property enabled the defendant to obtain a greater percentage of his debt than other creditors of the same class.

14. That early in January, 1931, the defendant sent, or caused to be sent, to creditors of Miller, a letter offering to put up money for a settlement with Miller's creditors of 50 cents on the dollar, and stated that Miller was in financial difficulties and that bankruptcy seemed the only way out, also that if bankruptcy ensued the creditors would get practically nothing.

15. That the defendant had reasonable cause to believe that the enforcement of the transfer would effect a preference.

16. That the defendant, at the time of the issuing of the execution and at the time of the execution sale, had reasonable cause to believe that Miller was insolvent.

17. That the merchandise, book accounts, and other property which came into the possession and ownership of the defendant as a result of the execution sale January 23, 1931, had a value of $8,000.

### Discussion.

Section 60a and section 60b of the Bankruptcy Act reads as follows: "(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of recording or regis-

62

tering of the transfer, if by law such recording or registering is required or permitted. (b) If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

Section 1 (25) of the Bankruptcy Act (11 USCA § 1 (25), defines "transfer": " 'Transfer' shall include the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security."

■ The judgments were both entered in accordance with confessions. In one case the confession was in a note and in the other case the confession was in a lease. As I view it, the fact that a judgment is entered in accordance with a confession in a lease does not cause the execution issued thereon to have the effect of a distress warrant. An execution on a judgment permits levying upon personal property of the defendant wherever located, while in distress proceedings the landlord is entitled to seize property upon the demised premises only. A judgment when entered becomes a lien upon real estate of the defendant. No lien upon real estate can be obtained by distress proceedings. In this case the sheriff levied not only upon the property on the demised premises but levied upon all of the personal property of Miller on the demised premises and elsewhere in Wyoming county. A landlord is entitled to subject goods of the tenant on the demised premises to payment of rent as a matter of right, and he does not lose the right to distrain for rent by obtaining judgment against the tenant for the same

rent. In re Barnhart (D. C.) 4 F.(2d) 269. A judgment entered in accordance with a confession in a lease is, in my opinion, such a judgment as is contemplated by section 60a of the Bankruptcy Act.

■ One of the judgments, it is true, was entered more than four months before the petition in bankruptcy was filed and the other judgment was entered within four months before the petition in bankruptcy was filed. The law deals with transfers of property as well as with judgments. A judgment is not a lien on personal property of the debtor; it is only the enforcement of such judgment that can possibly create a preference. The mere entry of judgment cannot. The plaintiff contends that by the sale upon the executions, when Greenwood became the purchaser, Miller's property was transferred to Greenwood. It has repeatedly been held that a sale on execution is a "transfer." In Grant v. National Bank of Auburn (D. C.) 197 F. 581, it was held: "A debtor, who transfers his property to a creditor by voluntarily confessing judgment in favor of the creditor and allowing him to issue execution and make a levy and a sale resulting in the creditor becoming the purchaser, transfers his property within Bankruptcy Act July 1, 1898, c. 541, § 1, subd. 25, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3418), providing that a transfer includes a sale and every other mode of disposing of property as a payment, pledge, mortgage, gift, or security." In Pirie v. Chicago Title & Trust Company, 182 U. S. 438, 21 S. Ct. 906, 908, 45 L. Ed. 1171, Mr. Justice McKenna, in the opinion of the court, said: " 'Transfer' is defined to be not only the sale of property, but 'every other and different mode of disposing of or parting with property.' All technicality and narrowness of meaning is precluded. The word is used in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another, and by which the result forbidden by the statute may be accomplished,—a preference enabling a creditor 'to obtain a greater percentage of his debt than any other creditors of the same class.' "

■ I find that by the execution and sale of the personal property of Miller as described in the bill of sale from the sheriff of Wyoming county to the defendant the property passed from the ownership and possession of Miller, resulting in a preference enabling the defendant to obtain a greater percentage of his debt than any other creditor of the same class. For to hold otherwise would be to hold

that a judgment could be procured at a time when the creditor has no reason to believe the debtor to be insolvent and then when the creditor learns of the insolvency of his debtor and threatened bankruptcy proceedings he could issue execution and collect his claim without fear of an action to recover the amount of the preference so obtained. It is not possible to believe that this result was intended by the Bankruptcy Act. Galbraith v. Whitaker, 119 Minn. 447, 138 N. W. 772, 43 L. R. A. (N. S.) 427.

Possibly it may be contended that recovery should be confined to the amount of money the defendant received from the sheriff on the judgments, in the absence of proof that the sale was a sham or unfairly conducted. But the law is that the trustee may recover the property, or its value, from the one who has received the preference. The property was seized by the sheriff under defendant's executions and sold, and the defendant bid in all of Miller's property consisting of automobiles, office supplies, store fixtures, quantities of household furniture, merchandise, book accounts, and all other personal property, valued at at least $8,000, for the sum of $339.50, and at a time when the defendant knew that Miller was hopelessly insolvent and when the defendant intended to obtain a preference. At the time of the sale, there was no trustee, and there is neither proof nor pretense that the general creditors had any information as to the sale. "When property is fairly and openly sold at public sale on due notice, the amount for which sold is some evidence of its value, but not final, conclusive, or determinative of that question of value." Grant v. National Bank of Auburn (D. C.) 232 F. 201, 213; Clarion Bank v. Jones, 88 U. S. (21 Wall.) 325, 22 L. Ed. 542. Therefore, the amount for which Miller's property sold on the execution sale is not determinative of its value.

As to the value of all of Miller's property transferred to the defendant January 23, 1931, Miller testified that an inventory taken a short time before January 23, 1931, showed the merchandise worth $9,000; that the fair market value of the business on January 23, 1931, was $8,000 to $8,500; and that the book accounts were worth in actual value $2,000 to $2,500. From all the evidence the property of Miller transferred to the defendant January 23, 1931, was in my opinion worth at least $8,000, and I have found that as a fact.

In my opinion the trustee has met the burden placed upon him by section 60a and section 60b of the Bankruptcy Act, and he is entitled to recover from the defendant the value of the property of the bankrupt which came into the defendant's possession and ownership January 23, 1931, as a result of the execution sale, together with interest from July 1, 1931, the date of the commencement of the action by the trustee to recover the preference. Kaufman v. Tredway, 195 U. S. 271, 25 S. Ct. 33, 49 L. Ed. 190.

Now, September 20, 1932, judgment is directed to be entered in favor of the plaintiff and against the defendant in the sum of $8,587.