In re RICHENELL FABRIC MFG. CO., Inc.
No. 20518.

District Court, E. D. Pennsylvania.
Feb. 28, 1940.

646

Bertram K. Wolfe, of Philadelphia, Pa., for alleged bankrupt.

Peter P. Zion, of Philadelphia, Pa., for petitioning creditor.

BARD, District Judge.

This case is before the Court on a petition to review an order of a Referee in Bankruptcy entering an order of adjudication.

The question certified by the Referee to this Court for decision is "Whether the alleged bankrupt company while insolvent made an intentional preferential transfer of its property, thus committing an Act of Bankruptcy." Chapter 575, Sec. 3, sub. a

(2), 52 Stat. 840, 844, 11 U.S.C.A. § 21, sub. a (2).[1]

On or about June 28, 1935, Joseph H. Ritchie and Robert Ritchie borrowed the sum of $5,000 in cash from the Frankford Trust Company of Philadelphia, for which they gave their promissory note. From this sum, the sum of $1,500 was used to purchase certain machinery and equipment from the bankrupt estate of Robert and J. H. Ritchie, Inc., and, under date of July 3, 1935, the said Joseph H. Ritchie and Robert Ritchie, as co-partners trading as Richenell Fabrics Manufacturing Company, transferred, by written bill of sale, title to the machinery to the Frankford Trust Company as collateral security for the repayment of the note. On the same day, July 3, 1935, Joseph H. Ritchie and Robert Ritchie transferred the machinery and equipment to Richenell Fabrics Manufacturing Company, Inc., the alleged bankrupt, subject however, to the rights of the Frankford Trust Company under said bill of sale and delivered possession of the machinery and equipment to the alleged bankrupt. On and prior to July 15, 1938, the alleged bankrupt was in default on account of the said note, whereupon the Frankford Trust Company seized and took physical possession of said machinery and equipment on the premises of the alleged bankrupt under and by virtue of the bill of sale and arranged for immediate public sale thereof. These facts are undisputed.

The petition in involuntary bankruptcy was filed on August 10, 1938, less than four months[2] after the seizure and sale took place.

The Referee found as a fact: (a) That at the time of the seizure and sale of the machinery and equipment of the said alleged bankrupt by the Frankford Trust Company on July 15, 1938, the alleged bankrupt was insolvent; (b) that the machinery and equipment seized and sold constituted all of the assets of the alleged bankrupt concern; (c) that the total liabilities amounted to approximately $11,000, of which the Frankford Trust Company was a claimant in the sum of $5,000; (d) that the seizure and sale took place within

---

[1] "Acts of bankruptcy by a person shall consist of his having * * * (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such cred-

itors over his other creditors." 11 U.S.C.A. § 21, sub. a.

[2] "A petition may be filed against a person within four months after the commission of an act of bankruptcy. * * *" 11 U.S.C.A. § 21, sub. b.

four months of the date when the petition in bankruptcy was filed; (e) that the machinery and equipment had never been delivered to the Frankford Trust Company until it was seized and sold on July 15, 1938.

These findings of fact are not seriously contested. The only objection thereto by the alleged bankrupt is that there was no evidence of any sale on July 15, 1938. Counsel for the alleged bankrupt admits that the seizure of the assets by the Trust Company was a "transfer" as defined by the Act, [3] and that the effect of the transfer amounted to a preference in favor of the creditor bank within the meaning of the law. [4]

He earnestly contends, however, that the necessary element of "intent to prefer" is lacking, because the alleged bankrupt remained inactive and did nothing on July 15, 1938, when the Frankford Trust Company took possession of all its assets.

He advances the theory that a transfer which creates a preference, made pursuant to a long standing agreement permitting the creditor to seize the debtor's assets and not pursuant to any voluntary act on the part of the debtor at the time of the seizure, is not a transfer made with the intent to prefer this creditor over its other creditors.

I can not agree with this view.

In the case of judgments, judgment creditors obtain no lien against personal property until execution and levy. In Adler v. Greenfield, 2 Cir., 83 F.2d 955, 31 A.B.R.,N.S., 439, a brother had obtained a default judgment against a bankrupt about one year before the filing of the petition in bankruptcy. About two months before bankruptcy, an execution was issued on the judgment and the sale held. The Court said, 83 F.2d at page 956, 31 A.B.R., N.S., 439: "The bankrupt's inaction from the time of levy of execution to the time of the sale indicates sufficiently his participation, so that he 'made the transfer.' It makes no difference that the judgment was obtained more than four months prior to the filing of the petition in bankruptcy. The judgment alone gives no lien against the debtor's personal property until the execution against it is delivered to the proper officer to be executed."

In Nogi v. Greenwood, D.C., 1 F.Supp. 60, a case arising in the Middle District of Pennsylvania, the bankrupt gave his judgment note on February 21, 1930, payable April 1, 1930, and the note was entered in Court as a judgment on March 31, 1930. Execution was issued January 16, 1931. In the opinion Judge Watson said, 1 F.Supp. at page 62: "The law deals with transfers of property as well as with judgments. A judgment is not a lien on personal property of the debtor; it is only the enforcement of such judgment that can possibly create a preference. The mere entry of judgment cannot." The Court held that although the judgment had been given more than four months prior to the execution, nevertheless the transfer constituted a preference. The opinion continued: "For to hold otherwise would be to hold that a judgment could be procured at a time when the creditor has no reason

---

[3] " 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise." 11 U.S.C.A. § 1 (30).

[4] "A preference is a transfer, as defined in this Act [title], of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, or of the original petition under chapter X, XI, XII or XIII [10, 11, 12, or 13] of this Act [title], the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. For the purposes of subdivisions a and b of this section, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy or of the original petition under chapter X, XI, XII or XIII [10, 11, 12 or 13] of this Act [title], it shall be deemed to have been made immediately before bankruptcy." Chapter 575, 52 Stat. 840, § 60, sub. a, 11 U.S.C.A. § 96, sub. a.

648

to believe the debtor to be insolvent and then when the creditor learns of the insolvency of his debtor and threatened bankruptcy proceedings he could issue execution and collect his claim without fear of an action to recover the amount of the preference so obtained. It is not possible to believe that this result was intended by the Bankruptcy Act. Galbraith v. Whitaker, 119 Minn. 447, 138 N.W. 772, 43 L.R.A. (N.S.) 427."

■ In the instant case, instead of a judgment, a bill of sale was given more than four months prior to the seizure. A pledge of a chattel without transfer of possession is void as to bona fide purchasers, pledgees and execution creditors acquiring rights in the chattels without notice of the pledge. Taplinger v. Northwestern Bank, 3 Cir., 101 F.2d 274, 39 Am.B.R.,N.S., 127.

■ Title to the machinery and equipment in the instant matter did not vest in the Frankford Trust Company until July 15, 1938, the date it acquired possession. During the interval between the date of the bill of sale and the seizure of the machinery the bill of sale was a fraud on the rights of other creditors who dealt with the alleged bankrupt, and the long interval in no way minimized, if it did not aggravate, the danger to their rights.

When the Frankford Trust Company seized all the assets of the debtor to be applied in reduction of the debtor's past due indebtedness, it left nothing for other creditors. Prior to the seizure the debtor was in possession of its assets, and its nonaction in permitting one creditor to seize all its assets indicated as complete an assent to the sale and as full an intent to prefer this one creditor as if the bill of sale had been signed the same day the creditor took possession of the machinery.

The alleged bankrupt was not under any legal disability when it permitted this one creditor to take possession of its assets, to be applied to the reduction of its past indebtedness to this creditor, in preference to other creditors.

■ Intent may be proved by presumption of law or by acts or statements of the parties involved. Intent is a mental attitude made known by acts. It is synonymous with aim or purpose and is disclosed to the world by the overt act of the person possessing the intent. One is presumed to intend the natural and probable consequences of his acts. In re Weisberger, D.C., 41 F.2d 275; Johnson v. Wald, 5 Cir., 93 F. 640. The intent to prefer may be inferred from the fact that a preference was the natural result of what was done. In re Yarns Corporation, D.C., 57 F.2d 309.

■ This Court, In re Weintraub, D.C., 30 F.2d 548, 550, in an opinion by Judge Kirkpatrick, said: "The intent to prefer, which is the object of this inquiry, is a statutory or presumed intent, and it can be found, though the actual intent may be otherwise." The opinion, 30 F.2d at page 549, quoting Collier on Bankruptcy, said: "'if a debtor, while insolvent, transfers all or nearly all his property to some of his creditors, leaving others unprovided for, the intent to prefer will be presumed.'" This case was affirmed by the Circuit Court of Appeals, 3 Cir., 30 F.2d 550.

The Referee, in the instant case, said in his report: "There is sufficient relevant evidence in this record to warrant a finding that the transfer was made with an intent to prefer the Frankford Trust Company over the other creditors of the alleged bankrupt company." Nothing has been presented that should cause me to alter this view. I think it may be inferred fairly that the alleged bankrupt transferred its assets with the intent to prefer one creditor over its other creditors. Any other inference would do violence to justice and reason.

The Referee found the following conclusions of law: "1. That the Richenell Fabric Mfg. Co. Inc. did commit an act of bankruptcy coming within the provision of Sec. 3, sub. a(2) of the Bankruptcy Act by voluntarily transferring while insolvent and within four months of the time the petition in bankruptcy was filed, substantially all of its assets to the Frankford Trust Company, a creditor with intent to prefer said creditor over its other creditors. 2. That an adjudication should be decreed." I adopt these conclusions of law as the decision of this Court.

The petitioning creditors are entitled to an adjudication. The order of the Referee ordering that an adjudication in bankruptcy be decreed is hereby confirmed.