**In re YARNS CORPORATION OF AMERICA.**

Petition of LAW et al.

No. 52218.

District Court, S. D. New York.

March 25, 1932.

Satterlee & Canfield, of New York City (Thomas F. Compton, of New York City, of counsel), for petitioning creditors.

Lhowe & Obstfeld, of New York City (Emanuel A. Obstfeld, of New York City, of counsel), for bankrupt.

WOOLSEY, District Judge.

I shall direct a verdict in favor of the petitioners in this case.

I. This is an issue of insolvency tried before me with a jury of one on an agreement by the attorneys for the respective parties that cross-motions for a directed verdict would be made at the end of the case.

These motions have now been made.

II. For my present purpose the facts are sufficiently set forth as follows:

The Yarns Corporation was what was known as a "thrower" of rayon yarns. Plants owned by it or its subsidiaries were at Spartanburg, S. C.; Allentown, Pa.; and Brooklyn, N. Y. Its head office, whence its business was conducted, was at 425 Fourth avenue, New York City.

On February 13, 1928, an underwriting agreement was entered into between the Yarns Corporation and A. M. Law & Co., investment bankers, of Spartanburg, S. C., for the issue by the bankers of bonds secured by a trust indenture of which the Central National Bank of Spartanburg was to be trustee.

On March 10th following the trust indenture was executed. The bonds distributed thereunder amounted in all to a total sum of $250,000, of which $244,000 were outstanding on June 3, 1931, the date on which the alleged act of bankruptcy occurred.

It was testified that it was customary for the producers of rayon to carry concerns similar to the Yarns Corporation on long credits, and on May 8, 1930, the Yarns Corporation owed the Viscose Company, a rayon producer, the sum of $507,000. On that date—May 8, 1930—the Viscose Company agreed to reduce its claim against the Yarns Corporation from $507,000 to $319,000. This agreement contained various mutual assurances which did not amount to definite obligations whereby the Viscose Company was to continue to carry the Yarns Corporation, and the Yarns Corporation was to continue to use the Viscose products.

The document of May 8, 1930, can fairly be described as a requirement contract of the familiar sort which is usually only binding on the contracting parties in so far as it has been performed. But it seems to have been definitely understood that it was binding in so far as it constituted a reduction of the amount of the claim by Viscose, and, as the parties have so treated it, I will assume that after that date the Yarns Corporation owed the Viscose Company only $319,000. In so holding, I am perhaps stretching the facts somewhat in favor of the Yarns Corporation.

III. During the year 1930, the business of the Yarns Corporation got progressively worse as month succeeded month, and requests for an audit by Mr. A. M. Law, of Law & Co., who was a director of the Yarns Corporation, and naturally had an interest in its condition owing to the bonds which he had floated, were continually stalled off by the Yarns Corporation.

On February 20, 1931, when the affairs of the Yarns Corporation were known to be in a very serious condition, Law, not acting officially for the bondholders, but merely from his natural interest which arose for the reason just stated, came to New York, and with the approval of the Yarns Corporation got into conference with the Viscose Company, with which the Yarns Corporation was having difficulties, and finally entered into an agreement by which the Yarns Corporation agreed to settle the claim of Viscose Company which was, apparently, treated as then being $319,000, for the sum of $75,000, if paid by May 20th.

It seems to have been realized at this time by all concerned that the Yarns Corporation was so crippled that it could not continue business on its old basis as a "thrower" of rayon yarns, or even on the basis of a dealer in rayon yarns, unless (1) the Viscose Company's claim was finally got out of the way on reasonable terms, and (2) unless additional money in the sum of at least $40,000 was secured in some way.

The interval of time between the settlement agreement with the Viscose Company of February 20th, and the due date for its performance, May 20th, was occupied throughout with conferences and negotiations as to the possibility of the Yarns Corporation's being able to secure a loan with Law's co-operation.

I find that there never was any promise on the part of Law to get the loan, that he was merely using his good offices owing to his aforesaid interest in the situation, to see whether a loan could be secured. The interested parties looked to the State Planters' Bank of Richmond, Va., which had sold some of the bonds of the Yarns Corporation for Law & Co., as a source from which the additional money might be procured.

IV. In late April, or early May, however, the vice president of the State Planters' Bank examined the books of the Yarns Corporation, and made up his mind that it was in

such a condition that he could not lend it any additional money.

The door to the only source of additional capital which has been mentioned in the case was, therefore, slammed in the face of the Yarns Corporation before May 20, 1931, the date of the performance of the settlement.

V. The settlement with the Viscose Company was not made on May 20th, and, in considering what steps should be taken to protect the bondholders' rights, various plans for liquidation of the Yarns Corporation were discussed between Law & Co. and the Viscose Company.

Meantime, without the knowledge of Law & Co., and on June 3, 1931, an agreement was entered into between the Viscose Company and the Yarns Corporation by which the Yarns Corporation turned over to a Mr. Le-Roy, as trustee, certain of its allegedly non-liquid assets, estimated to amount in value to about $100,000, under an agreement that Le-Roy was to liquidate them as assets over a period of time in such a way as to realize, if possible, at least $75,000, and, if that was done, the Viscose Company's claim of $319,-000 was to be settled for that amount.

The trust agreement further provided that, if the assets realized a greater amount than $75,000, such excess was to be returned to the Yarns Corporation.

According to the Yarns Corporation and its counsel, the theory of this adjustment, which was later reported to Law & Co., was that the assets turned over to the Viscose Company were not the quick assets of the Yarns Corporation, and that all its quick assets were still kept by the Yarns Corporation, and suggestions were made by it for a constructive program for its continued operation with Law.

The summer of 1931 was occupied in further negotiations between Law and the officers of the Yarns Corporation whose president, Mr. Grisman, suggested a reorganization plan which was naturally not satisfactory to the bondholders because it involved the necessity of their surrendering some of their somewhat inadequate security received from the Yarns Corporation under the trust indenture, in order to secure working capital to enable that commercial invalid to continue its business on a somewhat altered basis.

These negotiations did not eventuate in any agreement, and on or about September 17, 1931, the petition in bankruptcy, which is now before me, was filed against the Yarns Corporation.

VI. In determining whether there has been, here, an act of bankruptcy under section 3, subd. 2, of the Bankruptcy Act, 11 USCA § 21 (2), the precise questions that are to be decided by me in this case are: (1) Whether the Yarns Corporation, on a fair valuation of its assets, having regard to the crippled condition in which it then was, was insolvent on June 3, 1931, when it transferred part of its assets as above outlined in trust for the liquidation of the Viscose Company's claim; and (2) whether such transfer was made by the Yarns Corporation with intent to prefer the Viscose Company over its other creditors.

On June 3, 1931, the Yarns Corporation was partly shut down. It was not in any true sense a going concern. It was merely limping along in hopes of better times and more indulgent creditors.

I find that the assets of the Yarns Corporation may be fairly fixed as of that date at a total of $308,855; that its liabilities, including the outstanding bonds, and assuming that the Viscose indebtedness had really been reduced by the agreement of May 8, 1930, to $319,000, amounted to $641,250. If the agreement of May 8, 1930, did not constitute a real reduction of the Viscose claim, the liabilities amounted to $829,250.

It is clear, therefore, that at this time the Yarns Corporation was hopelessly insolvent.

The question of knowledge of this insolvency by its officers when the transfer of the assets were made to LeRoy, as trustee, for Viscose Company on June 3, 1930, is I find clearly answered in the affirmative by the negotiations in which all the interested parties had been involved from the first part of 1931 until the date of the transfer, June 3, 1931. They had all been trying for months to find a pulmotor to infuse new life into it.

I think, therefore, that I am quite correct in holding that Mr. Grisman knew of the Yarns Corporation's insolvency on June 3, 1931, or at least that he certainly did not have any reasonable grounds whatever for believing that it was solvent at the time when the transfer was made, or that he could treat all his creditors on the same basis as he was arranging to treat the Viscose Company.

VII. When a concern becomes insolvent, its assets, in the eyes of the bankruptcy statute, become dedicated in equity to its creditors for distribution among them according to their respective claims and the rank thereof.

■ If a transfer of part of the property of an insolvent is shown to have been made, as here, an intent to prefer is proved owing to the presumption that a man intends the necessary consequences of his acts. It then becomes necessary for the insolvent, if he would rebut the presumption, to go on with the evidence and show that when he made the transfer he did not know of his insolvency, and that from his knowledge of his affairs he had reasonable ground to believe that he could pay all his debts or at least give all his creditors the same percentage of their claims as he had given to the beneficiary of the alleged preference.

■ A debtor concern, after it is aware of its insolvency, no longer remains free to deal with its creditors severally as it may see fit.

■ The problem, as I see it, with which courts have principally to deal in all situations involving the question of a preference as an act of bankruptcy is to determine whether, vis-à-vis the debtor, the above mentioned creditors' equity against the assets of the debtor concern has arisen at the time of the transfer.

■ In order not unduly to hamper business by an equity of this kind, the limitation period within which to commence proceedings in bankruptcy is short—four months, and only within that period, before bankruptcy proceedings are started, does a preference found a cause of action in bankruptcy.

■ Whether there be a preference or not is tested—as most equities are tested—by the knowledge which the debtor has, or ought to have, as to his condition, and the intent which must necessarily be inferred therefrom.

■ The debtor may not achieve immunity from this inexorable rule by favoring a large and importunate creditor merely on the ground—here put forward—that to get rid of him would be a benefit to the future of the debtor's business.

■ VIII. The Bankruptcy Act regards the rights of creditors to an equitable distribution of a bankrupt estate as its first preoccupation, and it would be very dangerous to its purposes if the debtor should be held free to chancer his assets and give what he may consider his slow assets to one creditor and constitute his trust fund for the other creditors out of what he may consider his quick assets only. He must not be the person to marshal his assets, for. quite aside from the possible fallibility of his judgment, if candidly exercised, candor could not be assured if he were acting in making such transfer in the interests of his own future career.

■ Bankruptcy looks to history and not to hopes; to facts and not to possibilities. Cf. Matters v. Manufacturers' Trust Co. et al., 54 F.(2d) 1010 at page 1014 (C. C. A. 2).

■ So here, the transfer by the Yarns Corporation of what it claims, were its slow assets to be held in trust for liquidation of its settlement with the Viscose Company, which was its largest and most insistent creditor— however advantageous as between the parties— —does not prevent such a transfer from being a preference, when it was apparently known to, and in fact practically admitted by,. Grisman and those in charge of the Yarns Corporation that its only real hope of continuing business, even on a limited and much contracted basis, was (1) in getting rid of the Viscose claim by a favorable settlement,. and (2) in securing new capital.

IX. Accordingly, I think that, on the facts shown here, any other holding than that the Yarns Corporation committed an act of bankruptcy by giving a preference to the Viscose Company on June 3, 1931, is impossible.. Consequently, the petitioning creditors are entitled to an adjudication.