## Barton *versus* Hunter et al.

1. If a purchaser at a sheriff's sale has been guilty of some falsehood, trick or device before or at the time of the sale, by virtue of which he has obtained the property for less than it would otherwise have brought, he does not obtain a good title; and such a title may be defeated by a subsequent sale of the property on the judgment of another creditor.

2. The law presumes, however, that a public judicial sale is made in good faith, and this presumption stands unless overthrown by clear and satisfactory evidence of fraud or unfair means.

3. A., a debtor, and B., a judgment creditor, executed an agreement by which A. covenanted not to dispute any of B.'s claims of record against him, but to permit all of his real estate to be sold by the sheriff, as soon as possible, by due process of law, and not to interpose any hindrance thereto; and, further, to give up all receipts in his possession for moneys that had been paid on any liens against him, and which had not been receipted for on the docket. B, on the other hand, covenanted to purchase the property at the sheriff's sale, or cause it to bring a fair price if sold to some one else; and, further, that if she purchased the property herself, to re-sell it on time, and after all her claims were liquidated to place the remaining proceeds in the hands of some member of A.'s family. In pursuance of this agreement A.'s property was sold by the sheriff and B. became the purchaser. In an action of ejectment against B. by the purchaser of the said property at a subsequent sheriff's sale on a judgment of another creditor:

*Held*, that the agreement was not prima facie fraudulent; and, further, that under all the evidence the plaintiff could not recover.

October 25th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and GREEN, JJ. STERRETT, J., absent.

ERROR to the Court of Common Pleas No. 2 of *Allegheny county:* Of October Term 1882, No. 160.

Ejectment, by E. L. Barton, against Annie E. S. Hunter,

administratrix of Rev. Wm. Hunter deceased, and others, for a certain tract of land in Beaver and Allegheny counties containing about 142 acres. Both parties claimed title as purchasers at sheriff's sales of the land, as the property of James Strouss; the defendant at a sale held in 1875, and the plaintiff at one held in 1880.

On the trial, before WHITE J., the following facts appeared: In 1875 the land in question was owned by James Strouss, against whom there had been numerous judgments entered, some of which were recorded in both said counties, for money due the estate of Wm. Hunter deceased, and others. In the winter or spring of this year Strouss visited Mrs. Hunter, for the purpose of procuring an additional loan from her, but subsequently the following agreement was entered into between the said James Strouss, and Mrs. Hunter and Amos W. Enlow another creditor.

"This agreement made this third day of May 1875, between . . . .

"Witnesseth that the said James Strouss, in consideration of the covenants on the part of the parties of the second part hereinafter contained, doth covenant and agree to and with the said Amos Enlow and Annie E. S. Hunter, adm'x, that he will not dispute any claims of the said parties which stand upon the file of liens in Allegheny and Beaver counties against him, but will permit all his property and real estate to be put to sale by the sheriff of either of said counties as soon as it can be done by due process of law, and that he will not interpose any hindrance thereto, and that he will give up all receipts now in his possession for moneys that have been paid upon any liens against him which have not been receipted on the docket in the Prothonotary's office in said counties.

"And the said Amos Enlow and Annie E. S. Hunter, adm'x, in consideration of the covenants on the part of the party of the first part, do covenant and agree to and with the said James Strouss that they will either purchase the property and real estate aforementioned at the sale of the same made by the sheriff, or cause it to bring a fair and sufficient value if it be sold to any other parties, and further that they will, on condition of purchasing the property aforesaid, put the same to resale with payments on time, and then, after all claims of their own are liquidated, both principal and interest, they will place all remaining proceeds of the sale in the hands of any member of the family of said James Strouss that he may designate, and further that they will pay to the said James Strouss two hundred dollars on or before the first day of          , one thousand eight hundred and seventy five.

" In witness whereof we have hereunto set our hands and seals the day and year first above written.

" Sealed and delivered     JAMES STROUSS.     [L. S.]
     in presence of the     A. W. ENLOW.     [L. S.]
                 ANNIE E. S. HUNTER.     [L. S.]"

On March 5th 1875, in pursuance of this agreement Mrs. Hunter issued execution on one of the judgments held by her as administratrix and in December of the same year at the sheriff's sale, which had been adjourned from September, she bought the property for $4,550 being about $31.50 per acre. After the sale Mrs. Hunter obtained, for cash and notes, assignments to herself of the several judgments, which were prior liens to her own against the premises, and in the sheriff's return the $4,550 was first appropriated to the payment of these liens, and then on account of her other judgments some of which were not reached. Strouss retained possession of the property for a time but was subsequently dispossessed at the instance of the defendants, by sheriff's jury.

In 1880 other creditors who held judgments against Strouss subsequent to Mrs. Hunter's issued execution and had the property sold again by the sheriff, claiming that the sale in 1875 under the above agreement, was a fraud on the other creditors and void. At this sale, in 1880, E. L. Barton the plaintiff, acting as trustee for the other creditors, purchased the property.

The plaintiff submitted inter alia, the following points:

(1) " That the article of agreement of May 31st 1875, in evidence, is prima facie fraudulent as to creditors." Refused.

(2) " That any title to the property of James Strouss acquired by the defendant under the terms and conditions and in pursuance of the terms of the agreement of May 31st 1875, in evidence, is absolutely null and void as against bona fide creditors of the said James Strouss." Refused.

(14) That under the plaintiff's evidence tending to prove fraud on part of the defendant in this case, the jury will consider all the separate facts in evidence, whether each fact of itself would be sufficient or not to fasten fraud upon her in the premises, and they may consider separate facts, if they are connected by the evidence, and tend to prove that the defendant entered into and carried out a scheme or plan, to purchase the land in dispute at an undervalue, and for the benefit of herself and also the benefit of James Strouss or his family. Affirmed.

In the general charge the court instructed the jury inter alia as follows:

" A sheriff's sale should be free, open and untainted by fraud. Any trick or device of a purchaser which prevents a fair sale is a fraud upon creditors, and if by means of it he gets the property at less than it otherwise would have sold for he does not

obtain a good title and it may be defeated by a subsequent sale of the property on the judgment of another creditor. To work this result, however, the purchaser must have been guilty of some falsehood or trick before or at the time of the sale which succeeded, and he must have obtained the property for less than it otherwise would have sold for. All of these are essential elements to defeat the title of the purchaser. A mere fraudulent intent or effort, if not successful, is not sufficient, nor is the mere fact that the property was purchased at less than its value.

Plaintiff's counsel have asked me to instruct you that the agreement of May 31st 1875, is fraudulent on its face. We decline to give you such instructions. We say to you that it is not necessarily fraudulent, and further that we see nothing in it indicating an intention to cheat creditors or prevent a fair sale of the property. It does not bind Mrs. Hunter and Enlow, or Strouss, to do anything illegal and improper. Evidently drawn by one not much accustomed to draw such papers, it is full on unimportant matters and indefinite on those more vital. Why Strouss agreed not to dispute the claims of Enlow and Mrs. Hunter, and for what purpose he gave up the receipts, is not apparent, nor why they were to pay him $200. It is not to be simply inferred that these were fraudulent acts or for a fraudulent purpose. They seem rather to be in the nature of a compromise between the parties of some matters in dispute. What receipts were to be given up? Against the judgments of Enlow and Mrs. Hunter or on former judgments? And were they given up to enable Enlow and Mrs. Hunter to protect themselves from unjust claims of prior creditors, or to enable them to practice a fraud upon other creditors? When an agreement may be construed for an honest purpose a jury should not guess that it was intended for a fraudulent one. What was the $200 to be paid for? To secure the co-operation of Strouss in any fraud, as a loan or gratuity to him, or to avoid a factious and exactious opposition to the collection of honest claims against him? The inference should not be in favor of dishonesty but rather of honesty. The burden of proof is on the plaintiff to show an improper or fraudulent purpose in the agreement. It is only in the light of the surrounding circumstances that we can understand its real object, and for that reason we refuse to say it is prima facie fraudulent, but submit the question to you upon all the evidence in the case. The provision to re-sell the property, and after paying the defendants' claims, place the surplus, if any, in the hands of such member of the Strouss family as he might designate, if honestly made for the benefit of his family, and not for the purpose of hindering or delaying creditors or interfering with a fair sheriff's sale, was not fraud-

[Barton v. Hunter.]

ulent, and would not render the defendant's purchase at the sheriff's sale void as to the other creditors.

Verdict and judgment for defendants, whereupon the plaintiff took this writ, assigning for error, the charge of the court; and also the answers to numerous points submitted, and the rejection of certain offers of evidence.

*Barton & Son* and *A. M. Watson*, for plaintiff in error.— The judicial sale was brought about by the mutual consent and co-operation of the debtor and the creditors mentioned in the agreement and was therefore nothing more than a voluntary conveyance made by Strouss to Mrs. Hunter and A. W. Enlow of his land in Allegheny county and Beaver county for the benefit of particular creditors, preferences which are void and prohibited by statute, and as the same was not recorded within the thirty days thereafter, void as to creditors.

The suppression of the receipts was certainly an unlawful act which, taken with the others, might go far to satisfy the jury that the whole transaction was fraudulent. The evidence clearly shows a combination to put Strouss's land through the process of a judicial sale for the benefit of Mrs. Hunter, Amos. Enlow and Strouss, to the exclusion of other creditors.

*Thomas M. Marshall* and *A. M. Brown*, for defendants in error.—Mrs. Hunter was induced to enter into the agreement in evidence by the entreaties and threats of Strouss, who was a former parishioner of her husband and represented himself to be in want; and also threatened to set up the defence of usury against Mrs. Hunter's claims unless she advanced him more money. The agreement contained nothing illegal. It was simply an engagement on the part of Mrs. Hunter, to either purchase the property herself or see that it brought a fair value; and in the event of purchasing herself, to allow Strouss's family the profit of a resale. This could not defraud the other creditors but tended rather to secure a good price for the property. The charge that Mrs. Hunter desired to suppress the receipts for money paid on prior liens, is absurd, since it would have prejudiced her own later liens. She desired the receipts to ascertain just what was due each creditor.

Mr. Justice MERCUR delivered the opinion of the court, November 20th 1882.

Both parties claim title to this land under sheriff's sale as the property of James Strouss.

The defendant purchased at a sale made in December 1875, the plaintiff at one made in March 1880.

The plaintiff seeks to impeach the validity of the first sale

[Barton *v.* Hunter.]

on the ground that it was made in fraud of the creditors of Strouss.

The law presumes that a public judicial sale is made in good faith. This presumption stands, unless overthrown by clear and satisfactory evidence of fraud or unfair means. The contention was one of fact. Much evidence was given bearing on the question, and some of it conflicting. The learned judge submitted the case to the jury in a clear and correct charge. He instructed them that if the sheriff's sale was made with the intention of hindering, delaying or defeating creditors, and the purchaser had knowledge of such, it was null and void, although the full value of the property may have been paid; that a sheriff's sale should be free, open and untainted by fraud ; that any trick or device of a purchaser which prevents a fair sale is a fraud on creditors, and if by means of it he gets the property at less than it otherwise would have sold for, he does not obtain a good title, and it may be defeated by a subsequent sale of the property on the judgment of another creditor. To work this result the purchaser must have been guilty of some falsehood or trick before or at the time of the sale which succeeded, and he must have obtained the property for less than it otherwise would have sold. All of these are essential elements to defeat the title of the purchaser. A mere fraudulent intent or effort if not successful is not sufficient, nor is the mere fact that the property was purchased at less than its value. We think the plaintiff has no reason to complain of this declaration of the law. No error is assigned thereto. Then, as to the application of the evidence tending to establish the fraud, the court affirmed a point of the plaintiff put in these words, " under the plaintiff's evidence tending to prove fraud on the part of the defendant, the jury will consider all the separate facts in evidence, whether each fact of itself would be sufficient or not to fasten fraud on her in the premises ; and they may consider separate facts, if they are connected by the evidence and tend to prove that the defendant entered into and carried out a scheme or plan, to purchase the land in dispute at an under value, and for the benefit of herself, and also for the benefit of James Strouss or his family."

We do not deem it necessary to consider seriatim the twenty-five specifications of error. We do not think the article of agreement was prima facie fraudulent as to creditors ; nor do we see any error in the rejection of evidence. A wide range was given to its admission. A careful reading of it has led us to the conclusion that the portions of the charge and answer to which we have referred, fairly presented the substantial features of the case to the jury. We discover nothing which calls for a reversal.                    Judgment affirmed.