Donald L. TONER, Trustee of the Estate of Robert H. Leatherman, Bankrupt

v.

George F. NUSS and Cottman Realty Company.

Civ. A. No. 29727.

United States District Court
E. D. Pennsylvania.

Oct. 6, 1964.

458

Edmund V. Ludwig, Doylestown, Pa., for plaintiff.

Wm. B. Farran, Albert Loeb Katz, Philadelphia, Pa., for George F. Nuss.

KRAFT, District Judge.

Plaintiff trustee in bankruptcy of Robert H. Leatherman (Leatherman) brought this action against George F. Nuss (Nuss) and Cottman Realty Co. (Cottman), to recover the value of personal property of Leatherman purchased by Nuss at a sheriff's sale under execution upon a judgment entered against Leatherman by Cottman. Defendants filed a counterclaim.

The case was tried to the Court. From the evidence adduced, we make the following

### FINDINGS OF FACT

1. Commencing in 1957, Leatherman, trading under the name of "Leatherman Marine Service", engaged in the business of selling and servicing small boats and outboard motors and related accessories, at a store located on Route 309, north of Sellersville, Bucks County, which he occupied as tenant.

2. By written agreement titled "Pennsylvania Land Contract", dated January 1, 1959, Leatherman and wife, as buyers, undertook to purchase the aforesaid store premises from Cottman, as seller, for the consideration of $25,000, to be paid in equal monthly installments of $179, inclusive of principal and interest, during a term of 20 years, title of seller to be conveyed to buyers upon payment to seller in full.

3. For purposes of this suit only, Nuss and Cottman, a Pennsylvania corporation, are identical legal entities.

4. Leatherman was 31 years old at the time of trial and had been employed by a tire company as a truck driver and salesman prior to 1957. His formal education had ended at the 9th grade.

5. In May 1960, Leatherman advised Nuss by telephone that his business was having financial difficulties and that he doubted his ability to pay the installment then due under the land contract; Nuss replied, "Let it go", that he would "be up".

6. Nuss visited Leatherman on or about May 15, 1960, the day following their telephone conversation. At least two monthly installments were then overdue under the terms of the land contract. On this visit Nuss told Leatherman that he would "try to pull this business up on a paying basis again", and that, until it was on such basis, he would charge "a dollar a month installment".

7. Thereafter, during the remainder of May, and in June, July and August 1960, Nuss visited the store premises every day except Sundays, when the store was closed. On each occasion Nuss examined the cash receipts of the business and its books of account, which were maintained by an accountant until July 1960.

8. On or about May 15, 1960, following their discussion of the financial problems of the business, Nuss and Leatherman went to the Kiekhaefer Corporation, Riverside, N. J. There Nuss paid $2,699.17, by his own check, for the purchase of at least 4 outboard motors, which they brought back to Leatherman's store, pursuant to an agreement that Leatherman would pay Nuss 6 per cent interest on the purchase price.

9. Either at some later date in May 1960 or at the time of the subsequent sheriff's sale, following more discussion of the financial problems of the business, Leatherman received a piece of paper from Nuss on which, in the latter's handwriting, were the words, "No salaries or

Commissions. 6% on invested capital. Then profits to be divided equally."

10. On or about May 15, 1960, Leatherman Marine Service kept books of account at its store premises reflecting its financial condition, approximately, as follows:

Inventory,
at cost $7000 Accts. Pay. $8000
Equip. &
Tools 3500 Loans Pay. 10000
Accts. Rec. 3500

In addition, the business had an automobile and a pickup truck; and merchandise for sale, primarily boats, under a so-called "floor plan", not included in the above inventory.

11. On or about May 15, 1960, Leatherman had no personal bank account, savings account, stocks or bonds, real estate or notes or mortgages.

12. From May 15, 1960 to September 15, 1960, the date of the filing of his petition in bankruptcy, the value at cost of Leatherman's assets, plus the amount of his accounts receivable, at no time exceeded the amount of his accounts and loans payable.

During this entire period, Nuss had full, accurate and first-hand knowledge of the financial condition of Leatherman's business.

13. In the latter part of May 1960, Nuss told Leatherman that the business bank account required a substantial amount of money, so that checks would not be returned. In June Leatherman agreed to, and did, give Nuss authority to sign checks on the account. At the same time Leatherman revoked his own authority to sign checks.

14. On May 28, 1960, Nuss sent letters to two supply houses indicating his desire to do business with them as the agent of Leatherman Marine Service.

15. When another installment under the land contract fell due, in June 1960, Nuss agreed with Leatherman "to let it go until this whole mess got straightened out. * * *"

16. On July 8, 1960, judgment by confession was entered in favor of Cottman against Leatherman and his wife in the sum of $939.10, including interest and attorney's commission, in the Court of Common Pleas of Bucks County, by virtue of a warrant of attorney contained in the land contract, for installments due and unpaid thereunder.

17. Leatherman's first knowledge of the entry of judgment was the sheriff's levy thereunder. Nuss told Leatherman that he was having a levy made on the merchandise to secure it from any other creditors, and would have a sheriff's sale to get these other creditors "off" Leatherman's "back".

Nuss also told Leatherman that it was a "friendly levy"; that Leatherman "would keep the store open and sell the merchandise as before"; that "possibly eventually" Leatherman would have "to go into bankruptcy" to clear off any debts that he had. Nuss intimated that after bankruptcy "the store would stay open under a corporation"; that "it would be a partnership corporation under Leatherman and Nuss".

18. In the latter part of July 1960, following the levy, Leatherman and Nuss called on a prospective purchaser of the business. Nuss told Leatherman that it would be foolish to sell because they could save the business, which he would refinance "after the creditors and everything [were] taken care of", and the corporation formed.

19. In August 1960, prior to the sheriff's sale, Nuss stated to Leatherman that he had purchased from a credit corporation certain "floor planning" securing an interest in small runabout boats in the possession of the business. Nuss had previously acquired security interests in other boats, outboard motors and a pickup truck owned by the business. At this time there were no secured lenders other than Nuss who had claims against property owned by the business.

20. By assignment dated August 2, 1960, the credit corporation mentioned sold, transferred and assigned to Nuss

460

all of its interest in one Mercury outboard motor and several light runabout outboard motor boats owned by or in the possession of the business, and received in payment from Nuss the sum of $5010.-82.

21. Nuss terminated his authority to sign checks on the business bank account in July 1960.

22. Leatherman made no attempt, prior to the sheriff's sale, to stay the sale or to pay the judgment, because Nuss, in the course of a heated discussion, threatened to "close down" the business.

23. At times, between the dates of the levy and the sheriff's sale, Leatherman had sufficient funds in the business bank account to pay the judgment. Over the same period, Leatherman made several payments to Nuss upon obligations to Nuss other than the judgment. During the same period, Nuss never asked Leatherman to pay the judgment, although Nuss was at Leatherman's store every day except Sundays.

24. Prior to the sheriff's sale, Nuss told Leatherman that he would buy in all the merchandise sold so they could "get rid of the creditors and then * * proceed with a clean slate".

25. The sheriff's sale was publicly held at the store premises on August 11, 1960. Present at the sale, in addition to the officers conducting it, were: Leatherman, Nuss, a representative of Marine Equipment and Supply Co., a business creditor, the latter's attorney, two persons brought to the sale by Nuss and other persons unknown to Leatherman.

26. Immediately before the start of the sale, when Leatherman was asked certain questions, Nuss instructed him to answer no questions except those of a deputy sheriff, Leatherman followed the instructions.

27. Despite the presence of another creditor, its attorney and others there was little competitive bidding at the sale. Of the items levied upon only a sufficient number were sold to realize, in the aggregate, $1025. The remaining items were not sold. Nuss was the purchaser of the items sold and paid the sheriff the aggregate of the prices bid, to wit, $1025, in cash.

28. Following the sheriff's sale, Leatherman Marine Service continued in business at the same premises until late August or early September, and Nuss permitted the items purchased by him at the sheriff's sale to remain on the premises for resale.

29. On August 12, 1960, Marine Equipment and Supply Company filed a petition in equity in the Bucks County Common Pleas Court to set aside the sale. Plaintiff subsequently intervened in this proceeding.

On August 25, 1960, following consultation with counsel, Leatherman filed a petition in the Bucks County Common Pleas Court to set aside the sale. Plaintiff subsequently intervened in this proceeding.

No adjudication has been made on either petition by that Court.

30. The Sheriff of Bucks County has made no distribution of the fund of $1025 realized at the sheriff's sale.

31. Leatherman filed his voluntary petition in bankruptcy on September 15, 1960, and was adjudicated a bankrupt on September 25, 1960.

32. Plaintiff was appointed trustee of the estate of Leatherman in bankruptcy on October 5, 1960, and duly qualified shortly thereafter.

33. Leatherman ceased doing business and vacated the store premises in the latter part of August or early in September 1960. He took some merchandise with him and left other merchandise on the store premises.

34. In instigating the sheriff's levy and sale it was the intent and purpose of Nuss to hinder, delay, or defeat Leatherman's creditors. Leatherman knew of this intent and purpose and joined in effectuating it.

35. Nuss has sold or otherwise disposed of all of the items of merchandise which he purchased at the sheriff's sale.

36. The fair value of said items of merchandise was $1025, the amount realized at the sale and which Nuss paid to the sheriff.

37. The evidence before us was too vague, indefinite and uncertain to enable us to reconcile many of the items purchased by Nuss at the sheriff's sale as shown on Exhibit P–4 with the items shown on the later bankruptcy appraisal, Exhibit P–3.

38. Plaintiff instituted this suit on June 12, 1961.

## DISCUSSION

The primary facts were established by credible oral and documentary evidence. Our ultimate findings follow, we think, as a necessary inference from the basic facts.

Plaintiff contends that the facts establish a voidable preference under § 60 of the Bankruptcy Act, 11 U.S.C. § 96. We disagree. We think the evidence proves, at most, an inchoate preference. Section 60, sub. a(1) of the Act provides:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

It has been held repeatedly that a sale on execution is a "transfer". Nogi v. Greenwood, 1 F.Supp. 60, 62 (M.D.Pa. 1932). Leatherman was insolvent at the time of the sheriff's sale, which was within four months before the filing of the petition in bankruptcy. However, Cottman, the alter ego of Nuss, has never received any of the proceeds of the sheriff's sale in payment or on account of its judgment (the antecedent debt) because the sheriff, apparently due to the pendency of the two petitions to set aside the sale, has withheld, and still withholds, distribution of the fund realized at the sale. It follows that there has been no transfer of Leatherman's property to Nuss "for or on account of an antecedent debt". The transfer was one for a present consideration of $1025 in cash. On the present record, Nuss was merely a purchaser.

Alternatively, plaintiff relies upon § 70, sub. e of the Bankruptcy Act, 11 U.S.C. § 110, sub. e, which, in relevant part, provides:

"(1) A transfer made or suffered * * * by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

"(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer * * * shall be avoided by, the trustee for the benefit of the estate * * *. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer * * * against whoever may hold or have received it, except a person as to whom the transfer * * * specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws."

Here, we think, plaintiff is on firmer ground. It is settled law in Pennsylvania that where the purpose of a sheriff's sale is to hinder, delay, or defeat creditors, and the purchaser at the sale has knowledge of the intention, the sale shall be null and void, even though full value has been paid. Barton v. Hunter, 101 Pa. 406 (1882); Pepe v. Bean, 14 Fay.L.J. 33 (1951).

There can be no doubt about the reason for the sheriff's sale in the instant case. The record is replete with evidence of Nuss' expressed purpose to free the property from the claims of creditors. He procured Leatherman's acquiescence in this nefarious scheme by dangling before him the prospect of a fresh start in business after the sale. They were to "proceed with a clean slate",—if not with clear consciences. We conclude that the sale was void under the law of Pennsylvania. It may well be, too, that the sale was void under applicable principles of Federal law. See Heath v. Helmick, 173 F.2d 157 (9th Cir. 1949).

■ Since Nuss has sold or otherwise disposed of all of the merchandise acquired at the sale, plaintiff is limited to a recovery of its value. Plaintiff contends that this value was "at least $6,-383.49". He relies upon an apparisement made six months after the sheriff's sale by an appraiser appointed by the referee (Ex. P–3). We are not satisfied from the evidence, however, that all of the items of merchandise listed on this appraisement were the items actually bid in by Nuss. We are totally unable to reconcile a great many of the items on the appraisement with those marked items appearing on the sheriff's levy (Ex. P–4), which the parties agree were the items actually sold to Nuss at the sheriff's sale. Moreover, the weight of the evidence does not persuade us that the itemized valuations shown on the appraisement represent fair value. In short, we think the evidence will fairly support a recovery of no more than $1,025, the sum realized at the sale. As stated in Adler v. Greenfield, 83 F.2d 955, at p. 957 (2d Cir. 1936):

> "Although the price realized on a forced sale may not always be the measure of a 'fair valuation,' under the circumstances here it may be considered. It was a public sale and the appellant's debt was not so large as to give him control of the bidding if the goods were of a value at all near appellant's contention."

Nuss' counterclaim is for "the release of the cash proceeds" of the sheriff's sale "now impounded by the sheriff" of Bucks County. We think Nuss has mistaken his remedy. Plaintiff's "release" of the proceeds of the sale could not dispose of the claim of Marine Equipment and Supply Co. Both Leatherman and Marine sought to set aside the sheriff's sale.

We hold that the sale was null and void under Pennsylvania law, and that plaintiff, as trustee of the estate of Leatherman, is entitled to recover from Nuss the fair value of the merchandise which he purchased at the sale. We can only assume that the Court of Common Pleas of Bucks County, in an appropriate proceeding, will accord to our judgment the effect indicated by applicable legal principles.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. The sheriff's sale of August 11, 1960, was a "transfer" within the meaning of § 1(30) of the Bankruptcy Act, 11 U.S.C. § 1(30).

3. Leatherman was insolvent at the time of the transfer within the meaning of § 1(19) of the Bankruptcy Act, 11 U.S.C. § 1(19).

4. Nuss knew that Leatherman was insolvent at the time of the transfer.

5. The transfer was not a "preference" within the meaning of § 60, sub. a (1) of the Bankruptcy Act, 11 U.S.C. § 96, sub. a(1).

6. The transfer was null and void under the law of Pennsylvania.

7. The transfer was null and void as against the plaintiff trustee under § 70, sub. e(1) of the Bankruptcy Act, 11 U.S.C. § 110, sub. e(1).

8. Plaintiff is entitled to judgment against Cottman and Nuss in the sum of $1025.

9. Plaintiff is entitled to judgment against Cottman and Nuss on the counterclaim.